IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TK ELEVATOR CORPORATION,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>　　　　Defendant. | CASE NO.:<br><br><br><br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

Plaintiff TK Elevator Corporation, formerly known as thyssenkrupp Elevator Corporation ("Plaintiff" or "TKE"), by its counsel, asserts the following claims against Defendant Hartford Casualty Insurance Company ("Hartford" or "Defendant"), and alleges:

## NATURE OF ACTION

1. This insurance coverage action seeks damages and declaratory relief relating to Defendant insurer's wrongful refusal to honor its obligations to TKE, forcing TKE to pay for its own defense and a resulting settlement in connection with an underlying lawsuit. TKE seeks: (i) a declaratory judgment, pursuant to 28 *U.S.C.* § 2201, that Hartford must provide coverage for defense and indemnity costs arising from the aforementioned underlying lawsuit; and (ii) all appropriate damages arising from Hartford's breach of its insurance policies.

## JURISDICTION AND VENUE

2. This Court possesses subject matter jurisdiction over this action pursuant to 28 *U.S.C.* § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this action involves a dispute between citizens of different states.

3. Venue properly rests in this Court pursuant to 28 *U.S.C.* § 1391.

4. This action also is commenced pursuant to the Declaratory Judgment Act, 28 *U.S.C.* § 2201, *et seq*.

5. Plaintiff TKE is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 788 Circle 75 Parkway SE, Suite 500, Atlanta, GA 30339, and other places of business at (among other locations) 9001 51st Place, College Park, MD 20740-1965, and 513 Progress Drive, Linthicum Heights, MD 21090-2266.

6. TKE does business in and throughout Maryland.

7. Upon information and belief, Hartford is an insurance company incorporated under the laws of the State of Indiana and maintains its principal place of business in Hartford, Connecticut.

8. Hartford is licensed to do business and is doing business in Maryland. It is authorized to issue, and it issues, policies in Maryland.

9. Hartford is subject to jurisdiction in Maryland by having acted for the purpose of realizing pecuniary benefit in this State and by contracting to insure persons, property and/or risks located within this State.

10. Venue is properly in this district pursuant to 28 *U.S.C.* § 1391 because a substantial number of the events or omissions giving rise to the claim occurred here, including (among others):

   a. Defendant Hartford marketed, sold, issued and delivered the insurance policies that are the subject of this dispute to a Maryland insured, Nichols Contracting, Inc. ("Nichols"), at its Maryland offices located at 508 Olney Sandy Spring Rd #200, Sandy Spring, MD 20860;

    b. A Maryland insurance producer, Insurance Associates, a Marsh McLennan Agency LLC Company, with offices located at One Church Street, Suite 500, Rockville, MD 20850, assisted in placing the subject Hartford policies;

    c. Defendant Hartford is licensed or authorized to issue insurance policies, and it issues policies, in Maryland, including the policies that are the subject of this suit;

    d. Hartford's policies incorporate various Maryland mandatory endorsements, including those relevant to this dispute; and

    e. This insurance dispute arises, in part, from TKE's written contracts with non-party Nichols, which apply to work done in various locations, including Maryland, and require Nichols to include TKE as an additional insured under the subject Hartford policies, thereby entitling TKE to additional insured coverage as more fully set forth herein.

## FACTUAL BACKGROUND

11. TKE is engaged in the business of servicing, installing and modernizing elevators, escalators and moving walks.

12. On November 22, 2019, TKE signed a contract with BVIP Bayside Center, LLC to modernize two hydraulic elevators at Bayside Center 1 (the "Project").

13. Nichols is a contractor; it provides, among other things, electrical services.

14. On January 23, 2020, TKE entered into a Framework Subcontractor Agreement ("FSA") with Nichols. A true and complete copy of the FSA is attached as Exhibit A.

15. While the FSA serves as a master contract between TKE and Nichols, the FSA specifically references that individual job assignments would be made via a purchase order.

16. The FSA states that it "shall govern any and all work set forth in any purchase orders issued by" TKE.

17. On March 19, 2020, TKE issued Nichols Purchase Order No. 2876882 relating to the Project.

18. A true and complete copy of Purchase Order No. 2876882, along with the terms and conditions incorporated therein (collectively, "PO"), is attached as Exhibit B.

19. TKE hereinafter refers collectively to the FSA and the PO as the "Contract."

20. Under the Contract, Nichols agreed to perform certain electrical work on the Project (the "Work").

21. Under the FSA, Nichols expressly promised and agreed to "take all reasonable safety precautions with respect to the Work" and to "ensure that it coordinate[d] the Work with others as required by the hazardous energy control, confined space and any other applicable occupational safety and health standards."

22. Nichols further promised and agreed to "ensure that only personnel that have received appropriate health and safety induction training prior to the commencement of Work shall perform any of the Work and only those personnel who have been specifically trained to perform the Work shall enter the jobsite."

23. The FSA also obligates Nichols to hold harmless and defend TKE, and to name TKE as an additional insured under its insurance policies, including (among others) its commercial general liability and umbrella insurance policies.

24. As relates to Nichols' insurance obligations to TKE, the FSA states:

> **INSURANCE**: Subcontractor will, at all times, carry and continuously maintain at its own expense, or cause to be carried and continuously maintained, at least the minimum insurance coverage set forth below:

      c.    Commercial General Liability: limits of no less than $2,000,000 per occurrence and $2,000,000 in the aggregate which shall, at a minimum, include the following coverages: blanket contractual, products, operations, completed operations, independent contractors, and separation of insureds;

      e.    Umbrella/Excess Liability for Commercial General Liability and Automobile Liability: limits of not less than $5,000,000 beyond each primary policy.

thyssenkrupp Elevator Corporation and thyssenkrupp Elevator Manufacturing, Inc. shall be included as an additional insured (a) on Subcontractor's Commercial General Liability policy and any Umbrella/Excess coverage via ISO form CG 20 10 AND CG 20 37 and (b) on Subcontractor's Automobile Liability and Pollution Liability policies.  All such insurance must indicate that it is primary and without the right of contribution of any other insurance or self-insurance carried by or on behalf of thyssenkrupp and/or general contractor, architect, developer, owner and/or property manager that governs performance of the Work.  Subcontractor's insurers must also waive all rights of subrogation against thyssenkrupp and the applicable general contractor architect, developer, owner and/or property manager in connection with the Work as to Subcontractor's Commercial General Liability policy and any Umbrella/Excess coverage via ISO form CG 24 04 and also as to Subcontractor's Worker's Compensation, Pollution Liability and Automobile Liability policy(ies).

25.    The PO states that the Work was to be performed by Nichols in accordance with both the terms and conditions of the PO and the terms and conditions of the FSA.

26.    The PO and the FSA each state that in the event of a conflict between the terms and conditions of the FSA and the PO, the most expansive terms and conditions shall apply.

27.    The PO's terms and conditions contain language that is substantially the same as those contained in the FSA, with certain exceptions.

28.    The PO's terms and conditions contain the following insurance provision:

12. INSURANCE: [NICHOLS] shall carry, at its own expense, insurance coverage satisfactory to [TKE].  Unless otherwise specified herein or by project terms and conditions which are made

a part of this order by reference, the following insurance, with minimum limits shown, is required. . . . COMPREHENSIVE GENERAL LIABILTY (including Products Liability Coverage sufficient to protect [TKE] and [TKE]'s successors in interest to the goods/products **against liability in accordance with paragraph 11 above**) coverage for bodily injury and property damage with minimum limits of liability of $1,000,000 per person and $2,000,000 per occurrence that meets the additional insured obligations set forth in paragraph 11 above[.]

29.     "Paragraph 11 above" sets forth Nichols' defense and indemnification obligation under the PO as follows:

> 11. LIABILITY FOR DAMAGES: In consideration of [TKE's] order and/or purchase of the goods and/or service set forth on the face of this Purchase Order and provided by [Nichols] pursuant to this Purchase Order, [Nichols] expressly agrees to indemnify, defend, save harmless, discharge, release and forever acquit [TKE], their respective directors, officers, agents, employees, attorneys, affiliates, insurers and suppliers (hereinafter the "indemnified parties") from and against any and all claims, demands, suits, costs and expenses (including attorney's fees and court costs) and proceedings of any nature whatsoever, including, but not limited to, all claims, demands, suits, costs and expenses (including attorney's fees and court costs) and proceedings relating to and/or associated with . . . (b) injury (including death) to persons, and/or (c) economic loss of any type or kind, alleged to have arisen from, and/or in connection with any of the following: (i) the purchase, use, misuse, handling, application, installation, removal, presence, maintenance, manufacture, design, condition or operation of any of the goods and/or the provision of any of the services ordered by [TKE] and provided by [Nichols], (ii) any breach of warranty or other default of [Nichols] in the manufacture, shipment and/or sale of the goods and/or the provisions of any services ordered by [TKE] and provided by [Nichols]; or (iii) any breach by [Nichols] in the performance of its obligations as set forth in this Purchase Order and any applicable Master Subcontract for Services. **[Nichols'] obligations described above specifically includes any and all claims, demands, suits, expenses, proceedings or losses alleged or proven to have arisen from the joint or <u>sole negligence</u> of any of the indemnified parties.**

> [Nichols] expressly agrees to name the indemnified parties as additional insureds in [Nichols'] liability and all excess (umbrella) liability insurance policies. **Such insurance must**

6

ME1\57399613.v1

> **insure the indemnified parties for those claims or losses referenced in the above paragraph**. Such insurance must be primary and noncontributory. (emphasis added).

30. Under the PO, Nichols promised to buy insurance for TKE, including insurance covering TKE for its sole negligence.

31. On January 28, 2020, Nichols provided TKE with a Certificate of Insurance ("COI"), dated January 2020. A true and complete copy of the COI is attached as Exhibit C.

32. TKE relied on the COI provided by Nichols.

33. The COI stated that Nichols had purchased from Hartford Commercial General Liability Insurance with $1 million per occurrence limits, and Umbrella Liability Insurance with $5 million per occurrence limits for the period February 1, 2020 to February 1, 2021.

34. The COI also stated that TKE was "an additional insured with respect to General Liability (ongoing and completed operations) on a primary, non-contributory basis, as well as [the] Umbrella" insurance as required by Nichols' contracts with TKE.

35. On or about July 31, 2020, a Nichols employee, Henry Hernandez, Jr., was tragically killed while performing the Work for the Project.

36. Mr. Hernandez's executor filed a wrongful death action on August 16, 2021 (and Amended Complaint on August 30, 2022). The suit is captioned *Evelyn Hernandez, as Personal Representative of the Estate of Henry Hernandez, Jr. v. Cushman & Wakefield of Florida, LLC, et al.,* in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida ("*Hernandez*"). True and complete copies of the Complaint and Amended Complaint are attached as Exhibits D and E, respectively.

37. *Hernandez* seeks damages for negligence, and it arises out of the electrical Work being done by Mr. Hernandez and other Nichols' employees on the Project.

38. Hartford sold and issued two policies to Nichols, both covering TKE as an additional insured on the day of the Hernandez accident: Primary policy no. 42UEABH1047 (effective 2/1/2020–2/1/2021), and umbrella policy no. 42RHAQT9584 (effective 2/1/2020–2/1/2021) (collectively, the "Policies."). A copy of Hartford's primary policy, as produced by Nichols in *Hernandez*, is attached as Exhibit F.

39. Hartford's primary policy, to which Hartford's other policy generally follows form, provides broad coverage to TKE as an additional insured.

40. Under the Policies, Hartford promised to provide coverage to "Additional Insureds when Required by Written Contract [or] Written Agreement."

41. Hartford's Policies provide that "organization(s) are an additional insured when [Nichols] ha[s] agreed, in a written contract, written agreement . . . that such person or organization be added as an additional insured" and the involved injury for which coverage is sought "occurs subsequent to the execution of the contract or agreement."

42. Here, Nichols agreed in a written Contract to add TKE as an additional insured to its insurance policies, and Hernandez's injuries occurred after execution of the Contract with TKE.

43. Under the Policies, additional insureds are covered "with respect to liability for 'bodily injury' . . . caused, in whole or in part, by [Nichols'] acts or omissions or the acts or omissions of those acting on [Nichols'] behalf."

44. The Policies also include and incorporate by express reference Additional Insured endorsements, including CG20370413 (Additional Insured - Owners, Lessees or Contractors – Completed Operations).

45. By Hartford's admissions (in Exhibit G, its August 25, 2023 letter), the Policies state that organizations, such as TKE, are additional insureds for the bodily injury "caused, in

whole or part, by" the acts or omissions of Nichols and those acting on its behalf "[i]n the performance of [Nichols'] on-going operations."

46. The Hartford Policies state, among other things:

**SECTION II - WHO IS AN INSURED**

**2.** Each of the following is also an insured:

**f. Any Other Party**

Any other person or organization who is not an additional insured under Paragraphs **a.** through **e.** above, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

(1)    In the performance of your ongoing operations.

47. Mr. Hernandez and his co-worker(s) were acting on behalf of Nichols in the performance of its on-going operations on the day Mr. Hernandez suffered fatal injuries.

48. The acts and/or omissions of Mr. Hernandez and his co-worker(s) caused, in whole or in part, Mr. Hernandez's bodily injuries.

49. *Hernandez* alleges that Nichols' employee suffered fatal injuries because certain precautions and safety measures that Nichols assumed and agreed to provide under the Contract were not met, including Nichols' promise to "take all reasonable safety precautions with respect to the Work" and to ensure that only personnel that received safety and other training performed the Work.

50. Indeed, the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA"), Tampa Area Office, issued citations to Nichols in connection with Hernandez's accident including for its lack of training, including safety training, for Hernandez and those working with him on the day of his accident.

51. Moreover, Nichols, itself, through its corporate designee and president, Fred Nichols, conceded in *Hernandez* that only Nichols and its employees were at fault for causing Mr. Hernandez's death:

> Q. Who does Nichols Contracting believe was at fault for causing the accident?
>
> A. The report from OSHA is that it was basically employee negligence.
>
> Q. And when you say "employee negligence," what do you mean?
>
> A. The employee did not take necessary precautions to avoid this from ever happening.
>
> Q. And who are you referring to when you say "the employee"?
>
> A. Mr. Hernandez.
>
> Q. Does Nichols Contracting blame anybody else for causing this accident other than Mr. Hernandez?
>
> A. No, sir.

A true and complete copy of excerpts from the September 6, 2024 deposition of Fred Nichols in *Hernandez* is attached as Exhibit H (Dep. Tr. at 32:8–21).

52. The Contract requires that the Policies provide primary and non-contributory coverage. Here, Hartford's primary policy also expressly states that when Nichols agrees "in a written contract . . . that this insurance is primary and non-contributory with the additional insured's own insurance, this insurance is primary and we will not seek contribution from that other insurance."

53. Mr. Hernandez and his co-worker were acting on behalf of Nichols when Hernandez suffered injury, and *Hernandez* alleges that various precautions and safety measures that Nichols and its employees owed were not met.

54.     Through the Contract with Nichols, TKE delegated to Nichols, and Nichols accepted, that it would provide all precautions, safety measures and other obligations allegedly owed to the underlying plaintiff and about which *Hernandez* complains.

55.     *Hernandez* nevertheless seeks to hold TKE liable for Nichols' acts and omissions.

56.     TKE's alleged liability for bodily injury, in other words, is caused, in whole or in part, by Nichols' acts and omissions, and it is therefore covered by Hartford's Policies.

57.     Nichols advised the *Hernandez* Court that "the Subcontract require[es] Nichols to name TKE as an Additional Insured on various policies, and that such coverage be primary to any other available coverage."

58.     Nichols advised the *Hernandez* Court it "does not dispute that such insurance policies and Additional Insured status was required," and that "Nichols did, in fact, secure the required coverage with TKE included as an Additional Insured pursuant to an insured contract," and provided the Court with a copy of a Hartford insurance policy.

59.     Given Hartford's obligations, TKE gave timely notice of the *Hernandez* suit to Hartford.

60.     On or about August 4, 2020, TKE, through its third-party administrator, tendered *Hernandez* to Hartford, Nichols' insurer.  Attached as Exhibit I is a true and complete copy of the August 4, 2020 letter.

61.     Despite its obligation to acknowledge receipt of a claim, promptly undertake an investigation, and provide a coverage position, Hartford failed to respond to the tender to it as Nichols' insurer.

62. On April 6, 2022, TKE tendered directly to Hartford's insured, Nichols, demanding that Nichols and its insurer, Hartford, provide a defense to TKE. Attached as Exhibit J is a true and correct copy of the April 6, 2022 letter.

63. Despite its obligations, Hartford failed to timely and appropriately respond to the April 2022 letter.

64. Over three years after TKE's initial and direct tender to Hartford, and nearly one-and-one-half years after TKE's tender to Hartford and its insured, Nichols, Hartford denied coverage by letter dated August 25, 2023. Attached as Exhibit G is a true and correct copy of Hartford's August 25, 2023 letter.

65. Hartford's August 2023 letter erroneously and inaccurately claims that "nothing in the pleadings that [sic] allege that Nichols' acts or omissions (or those acting on its behalf) caused, in whole or part, the 'bodily injury' complained of." Hartford's denial ignores the allegations in *Hernandez*, including contentions that Mr. Hernandez was Nichols' employee; he was fatally injured while working for Nichols and with other Nichols' employees; and, he suffered injuries because certain precautions and safety measures that Nichols (and therefore its employees) owed and promised to provide under the Contract allegedly were not met.

66. Hartford's coverage position likewise ignores that (i) OSHA cited Nichols for its lack of training, including safety training, for Mr. Hernandez and those Nichols' employees working with him on the day of the accident, (ii) Nichols, itself, conceded in *Hernandez* that it -- and only it -- caused and was at fault for causing Mr. Hernandez's death, and (iii) *Hernandez* seeks to hold TKE liable for Nichols' acts or omissions that allegedly caused, in whole or in part, bodily injury to Mr. Hernandez.

67. On March 28, 2024, TKE, again wrote Hartford, demanding that it immediately acknowledge its duty to defend and indemnify TKE in connection with *Hernandez* under the Policies. Attached as Exhibit K is a true and complete copy of the March 28, 2024 letter with proof of mailing and receipt.

68. Hartford, despite its obligations to TKE, failed to respond to the March 2024 letter.

69. Insurers doing business in Maryland, including Hartford, are obligated by their contracts and otherwise to acknowledge, investigate, adjust and respond to claims submitted to them in a timely and fair manner and in full compliance with applicable laws and the insurance policies they have issued.

70. Insurers must give timely and prompt written notice if they are disclaiming or denying liability coverage sought from them under their contracts and Maryland laws and statutes.

71. Before being sued, and despite its obligations, Hartford **never** responded substantively to TKE's March 28, 2024 letter.

72. By its actions and inactions, Hartford has waived, and is estopped, from denying coverage to TKE and/or asserting coverage defenses.

73. On or around August 16, 2025, *Hernandez* settled in principle on a confidential basis, thereby avoiding the imminent trial otherwise set to begin on August 18, 2025.

74. In advance of the settlement in principle, and with trial looming, TKE demanded that Hartford contribute a confidential sum to the *Hernandez* settlement.

75. Hartford refused and failed to contribute to the settlement prior to trial, even though there existed a reasonable opportunity to do so for well within the Policies' liability limits, thereby forcing TKE to expend its own funds to resolve *Hernandez*.

76. Hartford has improperly favored other insureds over its insured, TKE.

77. In its defense and settlement of *Hernandez*, TKE has expended significant amounts, which it seeks to recover from Hartford under its Policies.

## FIRST CAUSE OF ACTION
**(Declaratory Relief)**

78. TKE incorporates and re-alleges the allegations set forth in Paragraphs 1 through 77 as if fully set forth herein.

79. TKE respectfully requests that the Court make a declaration as to the rights, status, and other legal relations existing between TKE and Hartford under the involved Policies.

80. TKE is an additional insured under the Policies.

81. *Hernandez* is a claim under the Policies, and it triggers Hartford's defense and indemnity obligations.

82. TKE's coverage is not subject to any exclusions in the Policies.

83. Hartford is obligated under its Policies to cover TKE, including for defense and indemnity, including to pay all sums that TKE becomes legally obligated to pay as damages, including by judgment or settlement, up to the applicable limits of the Policies.

84. Hartford has ignored and/or disputes its legal obligations to TKE under the Policies.

85. Hartford's unjustified failure and delay in responding to TKE's coverage requests is contrary to and/or prohibited, including under Maryland law.

86. An actual controversy of a justiciable nature currently exists between TKE and Hartford concerning the proper construction of the Policies and the rights and obligations of both the insurer and insureds, among other issues.

87. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

88. All parties necessary to the resolution of this controversy have been included herein.

89. The issuance of prompt declaratory relief by this Court is desirable and necessary to resolve the existing controversy between the parties. Such a declaration would resolve the current controversy between TKE and Hartford.

## SECOND CAUSE OF ACTION
**(Breach of Contract)**

90. TKE incorporates and re-alleges the allegations set forth in Paragraphs 1 through 89 as if fully set forth herein.

91. The Policies provide coverage to TKE for claims involved in *Hernandez*.

92. Any conditions requisite to coverage for TKE under Hartford's Policies have been satisfied or waived.

93. Hartford owed duties to TKE including to acknowledge and respond to its tenders, and to provide and acknowledge coverage to TKE for *Hernandez* up to the limits of the Policies.

94. TKE is entitled to be reimbursed from Hartford for amounts incurred and/or to be incurred in the defense of *Hernandez*.

95. Hartford is also obligated to (among other things) reimburse TKE for amounts incurred in settling *Hernandez*.

96. Hartford owes a duty of good faith and fair dealing to its insureds, including its additional insured, TKE.

97. Hartford has breached its contractual obligations to TKE by (among other things) failing to respond timely to TKE with an acceptance of coverage for the claim, failing to reimburse TKE's defense costs, failing to reimburse TKE for amounts incurred in settling *Hernandez*, and otherwise breaching its obligations at law and under the Policies.

98. As a direct and proximate result of Hartford's breach of its insurance contracts, TKE has suffered and will continue to suffer damages and harm in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, TKE respectfully requests that the Court enter judgment against Hartford and in favor of TKE, and grant the following relief:

a) On the First Cause of Action, TKE requests that this Court enter a declaratory judgment in favor of TKE and against Hartford concerning the existence of coverage available to TKE under Hartford's Policies for *Hernandez*, including defense and indemnity coverages;

b) On the Second Cause of Action, TKE requests that this Court award TKE all appropriate damages, including all monies spent in the defense and settlement of *Hernandez*;

c) On both Causes of Action, TKE requests pre- and post-judgment interest to the extent permitted by law; and such other and further relief as this Court may deem just and proper.

## JURY DEMAND

TKE hereby requests a trial by jury on all issues so triable.

Dated: August 25, 2025					McCARTER & ENGLISH, LLP


					By:_____/s/_____
						J. Wylie Donald, Esq.
						Bar No. 27946
						1301 K Street, NW, Suite 1000W
						Washington, DC 20005
						jdonald@mccarter.com
						Phone: (202) 753-3352
						Fax: (302) 220-4608


						_____/s/_____
						Sherilyn Pastor, Esq. (*pro hac vice motion to follow*)
						(signed by J. Wylie Donald with permission of Sherilyn Pastor)
						Four Gateway Center
						100 Mulberry Street
						Newark, NJ 07102
						Phone: (973) 580-3016
						Fax: (973) 297-3834
						spastor@mccarter.com

						*Attorneys for Plaintiff, TK Elevator Corporation*

17